IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JENNIFER PETKUS,

                         Plaintiff,

    v.

RICHLAND COUNTY,
WISCONSIN COUNTY
MUTUAL INSURANCE CORP./
AEGIS CORPORATION and
WILSON MUTUAL INSURANCE COMPANY,

                         Defendants.

OPINION and ORDER

12-cv-104-wmc

---

Following a three-day trial, a civil jury concluded that defendant Richland County's execution of search warrants and seizure of property on *pro se* plaintiff Jennifer Petkus's farm in May 2009 by the district attorney, sheriff, deputy sheriffs and approximately 40 to 50 animal rights activists and other volunteers violated both her Fourth Amendment rights and Wisconsin's common law of negligence.[1] (Special Verdict-Liability (dkt. #99).) Instructed without objection by either side that damages arising from a Fourth Amendment violation would necessarily be a subset of those for negligence, the jury awarded Petkus $60,000 on her Fourth Amendment claim and $133,480 on her negligence claim. (Special Verdict-Damages (dkt. #100).) On May 1,

---

[1] Estimates of the number of Human Society, ASPCA and other volunteers escorted onto plaintiff's property by law enforcement official by trial witnesses range from 35 to 100, but the consensus seems to put it around 50.

1

2013, judgment was entered in favor of Petkus against defendants Richland County and Wisconsin County Mutual Insurance Corp./Aegis Corporation in the amount of $133,480.00.[2]

The parties have filed several post-judgment motions. Richland County and Wisconsin County Mutual Insurance filed a motion to alter or amend the judgment or for a new trial under Fed. R. Civ. P. 59 or, alternatively, for relief from judgment under Fed. R. Civ. P. 60(b)(6). Plaintiff filed a motion to amend the judgment to include damages for both Fourth Amendment and negligence claims award of $193,480.00. For reasons explained below, the court will deny all of these motions.

## OPINION

To prevail on a Rule 59(e) motion to amend judgment generally, a party must "clearly establish" that (1) the court committed a manifest error of law or fact; or (2) newly discovered evidence precluded entry of judgment. *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). The "threshold of proof for the moving party is somewhat lower under Rule 59(e) than under Rule 60(b)," *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013) (citing *Harrington,* 433 F.3d at 546 (describing Rule 59(e)'s standard that a movant must "clearly establish" grounds for relief as a "contrast" with the "extraordinary remedy" of Rule 60 relief)). Defendants do not

---

[2] The judgment also reflected that summary judgment had earlier been granted in favor of defendant Wilson Mutual Insurance Company.

identify on which arguments they are pursuing Rule 59 or Rule 60 relief, but the court will generally apply the "somewhat lower" Rule 59 standard.

At the outset, it must be mentioned that defendants' Rule 59 motion is woefully underdeveloped. They essentially offer a laundry list of nine separate grounds for relief in their nine-page motion/brief with no citations to the record or superficial citation to case law. Particularly so late in this lawsuit, the court will deem any undeveloped arguments to be waived, just as it will those not properly preserved. *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (internal quotation marks and citation omitted)). Also waived are most of defendants' affirmative defenses, which defendants wholly failed to advance until *after* a full trial and jury verdicts against them on liability and damages in this matter. Nevertheless, each of defendants' arguments is discussed in turn below.

I. Negligence Claim

A. Immunity

With respect to the state law negligence claim, defendants appear to argue for the *first time* that Richland County enjoins immunity from this suit because the Sheriff's Department has absolute immunity when executing judicial orders, citing *Sell v. Thompson & Coates, Ltd.*, 163 Wis. 2d 765, 772, 472 N.W.2d 834, 836-37 (Ct. App. 1991). Similarly, they argue for the *first time* that the sheriff enjoys immunity in performing a

judicial or quasi-judicial function under Wis. Stat. § 893.80(4).  Defendants note that they alleged these affirmative defenses in their answer to the amended complaint, but do not explain how the court could have erred with respect to any of them since none were raised until now.

After asserting immunity defenses in their answer, defendants neither raised immunity in a motion to dismiss nor in a motion for summary judgment, instead choosing to let all claims go to trial.[3]  At trial, defendants were again silent, not even purporting to somehow preserve these defenses.  Even now, they offer no explanation for waiting until post-judgment motions to raise these defenses, nor do they argue it was somehow the court's duty to raise immunity defenses *sua sponte*.  Accordingly, the court finds that these defenses have been waived.

An affirmative defense pled in an answer does not automatically prevent a later finding of waiver if the parties "did not preserve the point when they had subsequent opportunity to do so."  *Gooden v. Neal*, 17 F.3d 925, 935 (7th Cir. 1994) ("A contention rooted in the facts of a case may not be raised for the first time after trial; it must be raised during trial. . . . Defendants did not rely on immunity before or during trial; the subject first arose in post-trial practice. That is too late."); *Maul v. Constan*, 928 F.2d 784, 786 (7th Cir. 1991) (finding that defendants who had arguably pled the affirmative defense of qualified immunity had waived the defense because "there is no reason the

---

[3] In their answer to Petkus's amended complaint, defendants state that they "pray for a dismissal of the Complaint" but did not file a formal motion to dismiss nor include a brief in support of this purported request, much less assert any right to immunity.

defendants could not have raised [it] earlier in the proceedings"). A party asserting an affirmative defense in a pleading must still litigate the case in a manner that is consistent with the way the party has pleaded. "[R]esponsive pleadings . . . do not preserve the defense in perpetuity. Defendants are required at some point to raise the issue by motion for the court's determination." *Burton v. N. Dutchess Hosp.*, 106 F.R.D. 477, 481 (S.D.N.Y. 1985).

Consequently, affirmative defenses may be "waived or forfeited [ ] on behalf of an appearing party who elects not to pursue those defenses for itself." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007). Such is the case here: defendants chose not to file a dispositive motion regarding immunity; defendants also failed to preserve the defenses at trial; and now, after trial, it is too late to do so.

### B. Damages Cap

Defendants also argue that Wisconsin law limits the amount recoverable in a tort action against a municipal defendant. Under Wis. Stat. § 893.80(3),

> the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any . . . political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000.

Defendants point out that they also raised this provision in their answer to the amended complaint, essentially conceding, as they must, that they did not raise the issue in a motion before or at trial.

5

Thus, the question is whether defendants have waived the damages cap as well. Under Wisconsin law, the damages limitation of § 893.80(3) is not considered an affirmative defense and cannot be waived by failing to raise it in an answer, during trial or in a post-verdict motion. *Anderson v. City of Milwaukee*, 208 Wis. 2d 18, ¶ 22, 559 N.W.2d 563 (1997). However, the application of affirmative defenses and the mechanics by which they may be utilized are matters of procedure governed by federal law. *Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir. 1954).

The Court of Appeals for the Seventh Circuit has not definitively opined that damages caps are affirmative defenses:

> A cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense. *A.D.E. Inc. v. Louis Joliet Bank & Trust Co.*, 742 F.2d 395, 397 (7th Cir. 1984); *Marino v. Otis Engineering Corp.*, 839 F.2d 1404, 1406 n.3 (10th Cir. 1988). The argument against treating a cap on damages as an affirmative defense is that it is contingent on the amount of damages sought, which the plaintiff is not required to set forth in his complaint.

*Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003).

Since the Seventh Circuit's decision in *Carter*, at least one district court has ruled that caps on damages *are* affirmative defenses:

> The Court of Appeals for the Seventh Circuit has acknowledged that there is a split among the judicial circuits regarding how to define "affirmative defense" for purposes of Rule 8(c). *Carter v. U.S.*, 333 F.3d 791, 796 (7th Cir. 2003). Although there is still no clear, full resolution of the issue, the Court of Appeals for the Seventh Circuit has found that complete and partial defenses fall within the ambit of Rule 8(c). *A.D.E., Inc., v. Louis Joliet Bank and Trust Co.*, 742 F.2d 395, 397 (7th Cir. 1984). For example, the court has suggested that damages caps and comparative negligence should

6

be considered affirmative defenses for purposes of Rule 8(c). *Carter v. U.S.*, 333 F.3d 791, 796 (7th Cir. 2003).

*See Carretta v. May Trucking Co.*, No. 09-158-MJR, 2010 WL 1139099, at *2 (S.D. Ill. Mar. 19, 2010).

Acknowledging that the issue is not wholly settled, this court is persuaded that the Seventh Circuit would consider the Wisconsin damages cap to be an affirmative defense and thus waivable. Because defendants did not raise even the possibility of a damages cap applying before or during trial, they have also waived this defense. The court's reason for so finding is admittedly driven in part by defendants' overall strategy of doing as little as possible to defend this case until after receiving an adverse jury verdict. Even now, having taken up plaintiff's and the court's time with pretrial motions, lost a jury trial and filed post-trial motions, defendants' submissions continue to read more like they hope to outlast the *pro se* plaintiff here, rather than to mount a meaningful defense. No doubt this is generally a cost-effective tactic for insurers of municipalities in the run of the mill case, especially where the plaintiff is acting *pro se*, but as reflected by the jury verdict here, neither the plaintiff nor her claims are run of the mill.

### C. Supervision

Under the terms of the search warrants, the Richland County Sheriff's Department was authorized to "bring with them . . . any other persons or agencies authorized by the Richland County District Attorney to assist in the search, the documentation of evidence, and the possible transportation of seized animals to a proper

shelter." This is what occurred based on testimony at trial: despite having always had, and availing themselves of, ready access to plaintiff's farm in the past for the purpose of inspecting the animals Petkus rescued or took in, the Sheriff's Department escorted volunteers from the American Society for the Prevention of Cruelty to Animals, the Humane Society of the United States and other organizations onto Petkus's property, while essentially placing the plaintiff and her parents under house arrest and then escorting them from her property as a multi-day search and seizure was conducted. Defendants nevertheless argue that Richland County cannot be held liable for any actions of these volunteers because the Sheriff's Department: (1) had no duty to supervise volunteers authorized by the district attorney; (2) "had nothing to do with the animal inspection, seizure, or removal;" and (3) cannot be held liable for volunteers operating as "independent contractors" in conducting the search.

     Defendants are essentially arguing that Richland County, its District Attorney and Sheriff can obtain a search warrant, but then "outsource" searches and seizures to independent third parties, thereby evading any responsibility for their conduct, even when the sheriff's department claimed to have coordinated the search, let the third parties onto the property, stayed at the scene while the seizures took place and ultimately exercised their authority under the warrant by seizing property recovered at the scene. Defendants neither cite to case law suggesting that a government agency may not be held responsible for its agents acting under its legal authority, nor can they argue on this record that the District Attorney, Sheriff and sheriff's deputies were not in charge

8

throughout the search and seizure. Even the search warrant return filed by Chief Deputy Tom Hougan states that he "searched the premises . . . and found the following," and that "on the days of May 19th, and 20th 2009 in the County of Richland, State of Wisconsin, under Warrant and *enforced by the Sheriff of the County of Richland* removed the following evidence." (Emphasis added.)

    Defendants' attempt to shirk the County's ultimate responsibility for the conduct of this search and seizure strains credulity given voluminous evidence and a jury's finding that all the individuals were authorized by its District Attorney to assist with its Sheriff's search, escorted onto and off of the property by the Sheriff and supervised (however poorly) by the Sheriff, Sheriff's Deputies and, occasionally, by the District Attorney himself. In any event, defendants provide such meager support for this legal argument that the court will not consider it further.[4]

### D. Notice of Claim

    In yet a different and equally new tack, defendants argue that Petkus's negligence claim should be dismissed because she failed to provide Richland County with an itemized statement of the relief sought. Section 893.80(1d) requires a plaintiff to serve notice on governmental entities and their officials, agents or employees before filing a lawsuit against them, including (1) "written notice of the circumstances of the claim,"

---

[4] This also disposes of defendants' related argument that there was no evidence showing that employees of the sheriff's department caused any damage to the property, as opposed to the volunteers who did so under the Sheriff's authority and supervision.

Wis. Stat. § 893.80(1d)(a), and (2) a claim containing "an itemized statement of the relief sought," § 893.80(1d)(b). When a claimant seeks damages, "a notice of claim must state a specific dollar amount." *Dept. of Natural Res. v. City of Waukesha*, 184 Wis. 2d 178, 199, 515 N.W.2d 888 (1994), *overruled on other grounds by State ex rel. Auchinleck v. Town of LaGrange*, 200 Wis. 2d 585, 547 N.W.2d 587 (1996). This is consistent with the stated purpose of the notice statute -- "to afford the municipality an opportunity to compromise the claim and settle it without a costly and expensive lawsuit," which cannot even be served "unless the claim presented demands a specific sum of money." *Gutter v. Seamandel*, 103 Wis. 2d 1, 9-10, 308 N.W.2d 403 (1981).

As with defendants' other arguments raised for the first time in this post-judgment motion, the court considers this argument waived. Even if not waived, however, defendants again fail to develop the issue sufficiently to prevail. Defendants fail to even provide the court with a copy of Petkus's so-called defective notice of claim, either by attaching it as an exhibit in support of their motion or citing to its presence somewhere else in the record.[5] Thus, the defendants have not "clearly established" any defect in the notice, much less addressed on what basis they could wait until the matter proceeded to trial and verdict before even raising it.

---

[5] After scouring the record itself, the court found, among *pro se* plaintiff Petkus's proposed trial exhibits, a version of the notice of claim sent to Petkus by her then-attorney after he revised it. Even assuming that a version of this document was submitted to the County as Petkus's "notice of circumstances of the claim" under Wis. Stat. § 893.80(1d)(a), Petkus still had an opportunity to file a separate "itemized statement of the relief sought." Although defendants might rightly have put plaintiff to her proof on notice at some earlier point in this lawsuit, when she could have responded, the court will not assume on an undeveloped record after trial and entry of judgment that her notice was defective absent proof from defendant of this fact.

### E. Jury Instructions on Negligence

Defendants also argue that the negligence verdict is fatally flawed because the jury (1) was not instructed on cause, and (2) the special verdict did not contain a discrete question on cause. Since defendants failed to object to the court's instructions or even submit a proposed instruction on the negligence claim, this argument will also be rejected.[6] *See* Fed. R. Civ. P. 51; *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 733 (7th Cir. 2004) (holding that defendant waived its argument by failing to propose a jury instruction requiring such a finding by the jury or by not objecting to the court's instruction); *Jabat, Inc. v. Smith*, 201 F.3d 852, 857 (7th Cir. 2000) ("When parties do not object to jury instructions, these instructions generally become the law of the case. Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the facts.") (citations omitted); *Orix Credit Alliance, Inc. v. Taylor Mach. Works, Inc.*, 125 F.3d 468, 477-78 (7th Cir. 1997) (holding that a party who fails to alert judge to objections to special verdict questions has waived such objections).

### F. Emotional Distress Damages

Defendants also argue that emotional distress damages are not available under Wisconsin law for claims of negligent damage to property. Unlike most of their other

---

[6] The proposed instructions offered by defendants were all *pro forma* and non-substantive, except for a somewhat garbled Fourth Amendment instruction inexplicably buried in the middle of a general, proposed instruction on how the jury should conduct its deliberations. (Dkt. #67 at 18-19.)

11

arguments, defendants present a well-developed analysis of this issue, noting that Wisconsin case law unambiguously prohibits such damages. *Kleinke v. Farmers Coop. Supply & Shipping*, 202 Wis. 2d 138, 145, 549 N.W.2d 714 (1996) ("[I]t is unlikely that a plaintiff could ever recover for the emotional distress caused by negligent damage to his or her property."). Moreover, defendants point out that injury to animals is considered a property loss case, even if a family pet is injured. *Rabideau v. City of Racine*, 2001 WI 57, ¶ 32, 243 Wis. 2d 486, 627 N.W.2d 795 (holding that emotional distress damages for negligent shooting of dog was unavailable because of public policy concerns). Defendants state that "the jury must have awarded damages for mental anguish and pain and suffering, which was admitted over objection."

As with defendants' other objections to the negligence instruction, however, this argument was waived by defendants, who neither offered an alternative negligence instruction, nor objected to the language of the instruction despite having numerous opportunities to do so before and during various jury instruction conferences held both before and during the trial. Defendants' brief does contain a vague reference to having objected to evidence of plaintiff's pain and suffering at trial, but that, too, is without foundation. Moreover, as plaintiff points out in her opposition brief, she and her parents had been effectively placed under house arrest and then escorted off their property.

While defendants' counsel certainly objected to expert testimony on certain *kinds* of evidence offered to show pain and suffering (*e.g.,* claimed infertility and other expert testimony), there was never an objection to proof of emotional damages generally. On

12

the contrary, defendants concede even now that such proof was *relevant* to plaintiff's claim for pain and suffering under her Fourth Amendment claim. Indeed, since the court only instructed on pain and suffering damages arising directly out of the search and seizure and its immediate aftermath, that award would have been part of the $60,000 award by the jury for defendants' Fourth Amendment violation that has not been challenged.[7]  For all these reasons, the court will deny defendants' Rule 59 motion regarding this issue as well.

## II. Fourth Amendment Claim

### A. Jury Instructions

Defendants similarly argue the court's Fourth Amendment instructions were flawed because (1) there is no authority for "inadequate supervision" as a basis for liability "given the evidence;" and (2) their proposed instructions were refused by the court without addressing the law raised by defendants in their proposed instructions. The court has already rejected defendants' undeveloped argument regarding supervision. As for defendants' proposed instructions (dkt. #67), they consisted of boilerplate instructions unrelated to the issues defendants would now raise. As noted earlier in this

---

[7] Defendants also allude to insufficient proof of "hard" dollar losses to justify the size of total damages awarded. First, plaintiff actually did an admirable job of showing the jury proof of such damages in before and after pictures, including of a farm house that had been renovated as an office and treating area and other out buildings, actual bills and payments to restore them, as well as gates and fences. Defendants are right that these documented outlays for repairs made through trial do not total the $133,450 award on the negligence claim, but plaintiff offered evidence and argued -- and the jury obviously accepted -- that more damage had been done than was as yet repaired, leaving to the jury what compensation was fair.

opinion, defendants *did* include a proposed special verdict regarding plaintiff's Fourth Amendment claim, focusing on whether the county maintained a policy or practice of depriving citizens of their constitutional rights, which the court did not adopt. But in their Rule 59 motion, defendants do not raise or develop an argument that the court erred in this regard.

### B. Court as Advocate

Finally, defendants challenge plaintiff's damages award on her Fourth Amendment claim by asserting that the court "became an advocate" through its "extensive questioning of witnesses." Citing *American Home Assurance Co. v. Sundance Supermarket, Inc.*, 753 F.2d 321, 327 (3rd Cir. 1985), defendants argue that a court may not "become so one-sided as to assume an advocate's position." The court has no quarrel with that proposition as far as it goes, but like most of their other arguments, defendants do not elaborate any further, legally or factually. In particular, defendants fail to point out or even describe in general terms a question or statement made by the court that amounted to more than an attempt to clarify, much less a string of questions and statements that would begin to fit the description of the court becoming "so one-sided as to assume an advocate's position." While the court is confident this did not occur here, it is also unaware of a single instance when defendants' counsel objected to a question or statement of the court, either in or outside the jury's presence or at side bar. Had there been, the court would have addressed it and taken steps to cure it if warranted.

The court was very cognizant throughout trial of the importance of leaving the *pro se* plaintiff to present her case as she saw fit within the rules of evidence and to neither favor nor disfavor her in any way. Questioning and efforts to clarify by the court during trial was purely to assist in understanding the facts, not to assist the plaintiff. To the extent the court's questions and comments suggested otherwise to defendants, the court can assure it was not intentional and suggests it may now be colored by defendants receiving an adverse verdict. Regardless, by failing to object at trial, defendants have effectively denied not just the court but plaintiff an opportunity to correct any misstep by curative instruction or otherwise. Therefore, this argument, too, has been waived.

### III. Plaintiff's Motion to Amend Judgment

As instructed, there is no realistic possibility the jury misunderstood that its $60,000 award on the Fourth Amendment claim was a subset of its $133,480 award on her negligence claim. To the extent Petkus is now asking that the jury's negligence and Fourth Amendment damages be added together, therefore, she is seeking a double recovery of the $60,000. Petkus also did not object to the jury instruction as submitted, meaning she has waived any argument to the contrary. Accordingly, her motion will also be denied.

By letter dated July 30, 2013, Pektus also requests "any revised judgment . . . including interest to date and accrued interest going forward until payment is received"

(dkt. #124), which defendants oppose (dkt. #126).[8] Interest runs from judgment as set forth by statute and the court is unaware of any legal basis for the court to alter that result.

ORDER

IT IS ORDERED that:

1. Plaintiff Jennifer Petkus's motion to amend the judgment (dkt. #113) is DENIED;

2. Defendants Richland County and Wisconsin County Mutual Insurance Corp./Aegis Corporation's motion to amend or alter the judgment (dkt. #117) is DENIED;

3. Plaintiff Jennifer Petkus's motion for interest and accrued interest (dkt. #124) is DENIED;

4. Plaintiff Jennifer Petkus's motion to strike (dkt. #127) is DENIED; and

5. Plaintiff Jennifer Petkus's motion for response (dkt. #128) is GRANTED.

Entered this 22nd day of October, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[8] Petkus subsequently moved to strike as untimely defendants' response opposing her letter/motion (dkt. #127), which the court will deny, although the court grants and has considered the accompanying "Motion for Plaintiff's Response to Defendants' Response" (dkt. #128).